[Filed March 7, 1892.]

22  115
a27   47

22  115
38  169
38  256

22  115
f47  407

MARY RODNEY ADAIR et al. *v.* BETHENIA A. OWENS ADAIR et al.

Per Strahan, C. J.:

Equity — Mortgage — Specific Performance.—A party who holds a deed for land, absolute in form, but in fact a mere security for money loaned, is a mortgagee only, without title to the land, and will not be compelled by a decree in equity to specifically perform a contract to convey the land, because such a decree would be ineffectual.

Per Bean, J.:

Suit to Redeem — Case in Judgment.—Pleadings examined, and *held*, that the bill discloses facts sufficient to constitute a cause of suit for redemption of the lands in controversy from the lien of a mortgage.

Clatsop county: F. J. Taylor, Judge.

Plaintiffs appeal.    Reversed.

The court below first struck out a part of plaintiffs' complaint and then sustained a demurrer to the residue and entered a final decree in favor of the defendants, from which this appeal is taken. The great prolixity of the complaint almost forbids its insertion in this statement, but the points decided by the court below will be best understood by its insertion. It is as follows:—

"The above named plaintiffs Mary Rodney Adair and Samuel D. Adair complain of the above named defendants Bethenia A. Owens Adair and John Adair, and for cause of suit allege: That on the eighth day of March, 1882, the plaintiff Mary Rodney Adair was, ever since has been, and now is the wife of the plaintiff Samuel D. Adair; that on the fourteenth day of October, 1885, the defendant Bethenia A. Owens Adair was, ever since has been, and now is the wife of the defendant John Adair, and that during the time of the happening of the several transactions and the execution of the several instruments hereinafter set forth, in which the defendant John Adair was concerned, he, bearing the same name as his father, who

was then living, was known and described in said transactions and instruments as John Adair, junior.

"That on said eighth day of March, 1882, the plaintiff Samuel D. Adair was the owner of and in possession of the following described lands, situated in the county of Clatsop and state of Oregon, to-wit: The lots numbered five, six, and seven of section twenty-six, and the lots numbered seven and eight of section twenty-seven, in township eight north, of range ten west of the Willamette meridian in the district of lands subject to sale at Oregon City, in the state of Oregon, containing one hundred and sixty-three and eighty-six hundredths acres, hereinafter called his homestead entry; and on said day the defendant John Adair was the owner of and in possession of the following described lands, situated in Clatsop county, to-wit: The lot numbered nine and the southeast quarter of the southeast quarter of section twenty-three, and the lots numbered one and two of section twenty-six, and the southwest quarter of the southwest quarter of section twenty-four, all in township eight north, of range ten west of the Willamette meridian, in the district of lands subject to sale at Oregon City, in the state of Oregon, containing one-hundred and sixty-five and eighty hundredths acres, hereinafter called his homestead entry; and on said day the plaintiff Samuel D. Adair and the defendant John Adair owned and possessed jointly the following described land situated in said Clatsop county, to-wit: The east half of the donation land claim of George W. Coffinberry, situated in sections twenty-two, twenty-three, twenty-six and twenty-seven, in township eight north, of range ten west, Willamette meridian, in the district of lands subject to sale at Oregon City, in the state of Oregon, containing three hundred and twenty acres, or thereabouts.

"That on said day, the plaintiff Samuel D. Adair and the defendant John Adair were indebted to one George H. Mendell in the sum of five thousand two hundred and

forty-eight dollars and eighty-three cents, or thereabouts, and were unable to pay the same; and on said day the plaintiffs did execute and deliver to the said George H. Mendell, a conveyance, absolute in form, of all the lands above described, as the homestead entry of the plaintiff Samuel D. Adair, and of the interest of the plaintiff in the lands above described as being jointly owned by himself and the defendant John Adair, and also all the right and title of said plaintiff to tide and overflowed lands, and all privileges of water front appertaining or belonging to said lands to ship channel in the Columbia river, together with the tenements, hereditaments and appurtenances to all of said lands belonging or in any wise appertaining. Said conveyance is hereinafter referred to as deed A.

"And on said day the defendant John Adair, being then unmarried, did execute and deliver to said George H. Mendell a conveyance, absolute in form, of the lands above described as his homestead entry, and of his interest in the lands above described, as belonging jointly to himself and the plaintiff Samuel D. Adair, and all of his right and title to tide lands and overflowed lands, and all privileges of water front appertaining or belonging to said lands to ship channel in the Columbia river, together with the tenements, hereditaments, and appurtenances to said lands belonging or in any wise appertaining. Said conveyance is hereinafter referred to as deed B; that while said conveyances were in form absolute transfers of title to the lands therein mentioned, nevertheless it was understood and agreed by and between the plaintiffs and the defendant John Adair of the one part and George H. Mendell of the other part, at the time of the delivery and acceptance of the said conveyances, that the conveyance called deed A was executed and delivered by the plaintiffs, and the conveyance called deed B was executed by the defendant John Adair, and both of said conveyances were received and accepted by the said George H. Mendell, not as absolute transfers of the

title to the lands in said conveyances, respectively mentioned, but as mortgages for the better securing of the payment of the sums of money above mentioned as owing from the said Samuel D. Adair and John Adair to the said George H. Mendell, and not otherwise; and it was further understood and agreed by and between these plaintiffs and the said John Adair of the one part and the said George H. Mendell of the other part, at the time of the execution and delivery of said conveyances, that whenever the said Samuel D. Adair and John Adair should pay to the said George H. Mendell the sum of money above mentioned, with interest thereon at the rate of ten per cent per annum from the eighth day of March, 1882, he the said George H. Mendell would immediately thereupon re-convey to the said Samuel D. Adair the title to said lands conveyed to him by the instrument called deed A, and to the said John Adair the title to the lands conveyed to him by the instrument called deed B, and that he would make such conveyance to either of them upon the payment of one-half said sum; and the said Samuel D. Adair was allowed by the said George H. Mendell to continue in the possession of the lands owned by him, and the said John Adair to continue in the possession of the lands owned by him, and the two to continue in the possession of the lands owned by them jointly.

"That thereafter, to wit, on the tenth day of April, 1883, the plaintiff Samuel D. Adair became the owner of and entered into possession of the following described land, situated in said Clatsop county, to wit: All the tide land lying north of, fronting and abutting upon the east half of the donation claim of George W. Coffinberry, in sections twenty-two and twenty-three, in township eight north, of range ten west, of the Willamette meridian, containing one hundred and one and seventy-two hundredths acres, hereinafter called his tide land purchase; and upon his procuring title to said land, it was considered and agreed by and

between the plaintiffs and the defendant John Adair and said George H. Mendell that the same should also be conveyed to him; and on the twentieth day of April, 1883, in pursuance of such agreement, the plaintiffs executed and delivered to said George H. Mendell a conveyance, absolute in form, of the title to said lands, together with the tenements, hereditaments, and appurtenances thereunto belonging. Said conveyance is hereinafter referred to as deed C.

"That said conveyance was executed and delivered by the plaintiffs and received and accepted by the said George H. Mendell upon the same terms and conditions in every respect as appertained to the conveyance called deed A, as hereinbefore fully set forth and shown; and the said Samuel D. Adair was allowed by the said George H. Mendell to remain in the possession of said lands; that after the execution and delivery of the conveyances above mentioned, and until the fourteenth day of October, 1885, said George H. Mendell continued to hold said conveyances, and no part of his said claim against the plaintiff Samel D. Adair and the defendant John Adair was paid.

"Wherefore and because the said George H. Mendell was desirous of securing payment of said claim, and said Samuel D. Adair and John Adair were both unable to make payment of the whole of his share thereof, it was on said day mutually agreed by and between the plaintiffs and defendants and said George H. Mendell that the defendant Bethenia A. Owens Adair would discharge the indebtedness of the said Samuel D. Adair and John Adair to the said George H. Mendell, and that he, the said George H. Mendell, would thereupon transfer to her, the said Bethenia A. Owens Adair, the title to the lands previously conveyed to him by the instruments hereinbefore described, and that she should receive, accept and hold the title to said lands in all respects upon the same terms and conditions as the same were held by the said George H. Mendell, whereof she was then and there by the plaintiffs,

the defendant John Adair and said George H. Mendell fully advised.

"That thereupon and in pursuance of said agreement, the said George H. Mendell and Ellen A. Mendell, his wife, did on said fourteenth day of October, 1885, execute and deliver to the said Bethenia A. Owens-Adair their certain written obligation, called a bond for deed, whereby they agreed and bound themselves, upon the payment by her of the said debt owing to said George H. Mendell, and upon certain conditions therein named, to execute and deliver to the said Bethenia A. Owens Adair on or before the first day of January, 1887, a conveyance of the title to the following-described lands, situated in said Clatsop county, to wit: All those certain pieces or parcels of land known as the east half of the Coffinberry donation land claim and the frontage thereof to ship channel of the Columbia river; also the homestead claim of said John Adair and said Samuel D. Adair, together with all improvements and hereditaments thereon or anywise appertaining thereto, all said lands being and lying in township eight north, range ten west of the Willamette meridian, containing six hundred and forty acres, more or less. Said instrument is hereinafter called bond A.

"That thereafter, to wit, on the twenty-fifth day of November, 1885, John Adair, the father of the plaintiff Samuel D. Adair and the defendant John Adair, herein called the elder, and Mary Ann Adair the mother of said plaintiff and defendant, were each the owners of a tract of land situated in said Clatsop county, adjoining the east half of the said Coffinberry donation land claim, and known as the Brian Lavery donation land claim, lying in township eight north, range ten west, of the Willamette meridian, and containing three hundred and nineteen and eighty-nine hundredths acres; and said John Adair, the elder, and Mary Ann Adair were desirous of conveying and had agreed to convey to the plaintiff Samuel D. Adair

and the defendant John Adair equally the title to said lands in consideration of the payment by said plaintiff and defendant of the sum of two hundred dollars per annum to them and to the survivor of them, during life, and of the further payment at the death of the survivor of them to their heirs of the sum of four thousand dollars.

"And thereupon the plaintiff Samuel D. Adair and the defendant John Adair, wishing to make provision for the segregation of their interests in the lands, then held by the said George H. Mendell, and agreed to be conveyed by him to the defendant Bethenia A. Owens Adair, as well as the said Lavery donation land claim, proposed to be conveyed as aforesaid, and the plaintiff Samuel D. Adair wishing his interest in all of said lands to be conveyed to the plaintiff Mary Rodney Adair in his stead, and the defendant John Adair wishing his interest in all of said lands to be held by defendant Bethenia A. Owens Adair in his stead, it was on said day mutually agreed by and between the plaintiffs and defendants and said John Adair, the elder, and Mary Ann Adair that the plaintiff Samuel D. Adair should execute to the said John Adair, the elder, and Mary Ann Adair his writing obligatory, whereby he should agree and bind himself to pay to their heirs the sum of two thousand dollars, less his interest as heir, for his interest in said Lavery donation land claim, proposed to be conveyed to him; and the said John Adair, the elder, and Mary Ann Adair would execute to the ɪdefendant Bethenia A. Owens Adair a conveyance of the whole of said Lavery donation land claim upon her executing to them her writing obligatory, whereby she would agree and bind herself to pay to them during their lives and to the survivor during his or her life the sum of two hundred dollars per annum, and to pay to their heirs the sum of two thousand dollars, less the interest of the said John Adair as an heir; that said defendant should thereupon by her writing obligatory, agree and bind herself that upon her obtaining the title from the said

George H. Mendell, and upon the payment to her by the plaintiff Mary Rodney Adair of the moneys owing to said defendant from the plaintiff Samuel D. Adair, by reason of the matters hereinbefore stated, and of the sum of one hundred dollars per annum, being half the annuity agreed by said defendants to be paid to said John Adair the elder and Mary Ann Adair, as aforesaid, said defendant would convey to said plaintiff the one-half of all the lands then held or to be acquired by her as hereinbefore set forth, and that said defendant should retain the other half of all of said land to her own use.

"That thereupon, and in pursuance of said agreement, the plaintiff Samuel D. Adair on said day entered into a written agreement, and delivered the same to the said John Adair the elder and Mary Ann Adair, whereby he bound himself, his heirs, executors, and administrators, to pay their heirs the sum of two thousand dollars, less his interest as heir. And thereupon, and in the further pursuance of said agreement, the said John Adair, the elder, and Mary Ann Adair on said day executed and delivered to the said defendant Bethenia A. Owens Adair a conveyance of all their right, title, and interest in and to the said Lavery donation land claim for an expressed consideration of one dollar and other valuable considerations.

"And thereupon, and in further pursuance of said agreement, the defendant Bethenia A. Owens Adair on said day entered into a written agreement with and delivered the same to the said John Adair the elder and Mary Ann Adair, whereby said defendant agreed and bound herself, her heirs, executors and administrators, to pay to them, and to the survivor of them during life, the sum of two hundred dollars per annum, and to pay to their heirs the sum of two thousand dollars, less the interest of the defendant John Adair as heir; that the said defendant paid nothing for the execution to her of said last-mentioned conveyance, and the only consideration therefor was the

terms of the agreement above set forth, and her promise
contained in her written obligation, last above set forth.

"That thereafter, and in further pursuance of said agree-
ment, the defendant Bethenia A. Owens Adair on said day
entered into with and delivered to the plaintiff Mary
Rodney-Adair her certain writing obligatory called a bond
for a deed, whereby said defendant agreed and bound her-
self, her heirs, executors and administrators, upon the
performance of certain conditions therein expressed, and
the payment of certain moneys therein set forth, at certain
fixed times therein stated, and the further payment by said
plaintiff to said defendant of the sum of one hundred
dollars per annum during the life of the said John Adair
the elder and Mary Ann Adair, and the life of the survivor
of them, that she, said defendant, would convey to the
plaintiff the following described parcels of the land here-
inbefore set forth, to-wit, the homestead entry of the plain-
tiff Samuel D. Adair, and all that portion of the east half
of the Coffinberry donation land claim which lies on the
west side of the slough known as Adair's slough, from the
point where the main branch of said slough crosses the
northern boundary line of Samuel D. Adair's homestead
entry, called point A, northerly along said slough to the
point where the same empties into Young's bay, called
point B, and also such part of the Lavery donation land
claim as should be found lying west of the main branch of
said slough between said points A and B, and also the west
half of the water frontage of the east half of the Coffin-
berry donation land claim, said west half of the frontage
to be bounded on the east side by a north and south line
drawn from the shore line of Young's bay to the ship
channel of the Columbia river, and between and equally
distant from two parallel lines which extend due north
from the eastern and western points of the shore line of
Young's bay with the said east half of the Coffinberry
donation land claim, it being understood and agreed that

said water frontage was the west half of the water frontage of the east half of the Coffinberry donation land claim as originally purchased from the state of Oregon by the plaintiff Samuel D. Adair, and above described in his tide land purchase, together with the tenements, hereditaments and appurtenances to said lands belonging or in any wise appertaining. And it was then and there agreed by and between the plaintiffs and defendants and the said John Adair the elder and Mary Ann Adair, that upon the full execution by the defendant Bethenia A. Owens Adair of the conveyance in said instrument mentioned, she should retain to her own use all the other lands hereinbefore described as conveyed to her or proposed to be conveyed; that the defendant John Adair fully assented to the terms of said instrument, and on the eighth day of December, 1885, by written endorsement thereon over his own signature, bound himself to join in such deed of conveyance as might be executed by the defendant Bethenia A. Owens Adair to the plaintiff Mary Rodney Adair, in pursuance of the terms of said instrument. A copy of said instrument with said endorsement thereon is hereto annexed as an exhibit and made a part of this complaint, and marked Exhibit A.

"That the annual payment of one hundred dollars provided for in said instrument was intended to reïmburse the defendant Bethenia A. Owens Adair for one-half of the annual payment of two hundred dollars, agreed by her to be paid to the said John Adair the elder and Mary Ann Adair, being one-half of said sum originally designed to be paid by the said Samuel D. Adair; that upon the execution and delivery of said instrument to the plaintiff Mary Rodney Adair she was, by defendant Bethenia A. Owens Adair, placed in sole and exclusive possession and occupancy of the lands in said instrument described, and has so continued to the present day.

"That Adair's slough, hereinbefore mentioned, is a natural watercourse, having its source near the south boundary line of section eight, above mentioned, and the main branch thereof, hereinbefore mentioned, flows in a a northerly course through a sinuous channel across the lands above described as the homestead entry of the plaintiff Samuel D. Adair, the east half of the Coffinberry donation land claim and the Lavery donation land claim; and it was, on said twenty-fifth day of November, understood and believed by the plaintiffs and defendants, that of the east half of said Coffinberry donation land claim there lay on the east side of the main branch of said slough between said points A and B, thirty acres; and of the Lavery donation land claim there lay on the west side of said main branch between points A and B, twenty acres; that the agreement for a division of said property entered into between the plaintiffs and defendants as above set forth, and the execution, delivery, and acceptance of the instrument, whose copy is above set forth as Exhibit A, were all based upon said understanding and belief that the main branch of said slough intersected the east half of said Coffinberry donation land claim and the said Lavery donation land claim, between said points A and B, as above set forth, and not otherwise; but in fact and in truth, there is on the east side of the main branch of said slough between said points A and B, fifty-five acres, or thereabouts, of the east half of said Coffinberry donation land claim, and on the west side thereof but three acres, or thereabouts, of the Lavery donation land claim; and that said discrepancy was not known to the plaintiffs, or either of them, until after the execution of the conveyance from the defendant Bethenia A. Owens Adair to B. Wistar Morris, in trust to the plaintiff Mary Rodney Adair, hereinafter set forth.

"That thereafter, and in pursuance of the agreement hereinbefore set forth, as having been entered into by and

between the plaintiffs and defendants, of the one part, and the said George H. Mendell, of the other part, on the fourteenth day of October, 1885, and in discharge of the obligation hereinbefore set forth, called bond A, to-wit, on the twenty-first day of December, 1886, the said George H. Mendell and Ellen A. Mendell, his wife, in consideration of the sum of six thousand eight hundred and seventy-five dollars, to said George H. Mendell paid by the defendant Bethenia A. Owens Adair, for and on account of the plaintiff Samuel D. Adair and the defendant John Adair, executed and delivered to the said defendant Bethenia A. Owens Adair, a certain instrument of conveyance of the title of the homestead entry and the tide land purchase of the plaintiff Samuel D. Adair, and the homestead entry of the defendant John Adair, and the east half of the Coffinberry donation land claim.

"That on the thirtieth day of December, 1885, the plaintiff Mary Rodney Adair paid to the defendant Bethenia A. Owens Adair the sum of one hundred and sixty-two dollars and eighty-seven cents, being the full amount of interest to date of payment due from said plaintiff to said defendant on the instrument, whose copy is hereinbefore set forth as Exhibit A, and on the thirty-first day of December, 1886, said plaintiff paid to said defendant the sum of two hundred and fourteen dollars and four cents, being the full amount of interest to date of payment due on said instrument, and on the twenty-ninth day of April, 1887, said plaintiff paid to said defendant the sum of one thousand dollars on account of the expense of constructing a certain dyke, provided for in said instrument, and said plaintiff was allowed a further credit of sixty-eight dollars and twenty-two cents as discount on said payment of one thousand dollars for having made the same before it fell due, under the terms of said instrument; and said plaintiff, on the twenty-ninth day of April, 1887, paid to said defendant the sum of fifteen hundred dollars, on account

of the principal of the moneys mentioned in said instrument, and in consideration of said payment, at the request of said plaintiff the defendant executed and delivered to B. Wister Morris in trust for said plaintiff, a conveyance for the following described portion of the lands described in said instrument, to-wit, all that portion of the east half of the Coffinberry donation land claim which lies on the west or left hand side of the slough, called Adair's slough, from the point where the main branch of said slough crosses the northern boundary line of the plaintiff Samuel D. Adair's homestead entry to the point where said slough empties into Young's bay, together with the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, but not including any portion of the Samuel D. Adair's tide land purchase.

"That on the eighteenth day of December, 1885, John Adair the elder and Mary Ann Adair caused to be spread upon the record of deeds for said Clatsop county the agreement entered into between them and the defendant Bethenia A. Owens Adair, on the twenty-fifth day of November aforesaid, and thereafter, to wit, on the sixteenth day of December, 1886, said defendant was desirous of obtaining a loan of money on said Lavery donation land claim by securing said loan by a mortgage upon said lands; and objection being made to said agreement as an encumbrance thereon, in order to enable her to accomplish such end, she requested said John Adair, the elder, and Mary Ann Adair to release said agreement so as to enable her to effect said loan, promising to reëxecute and re-deliver the same as soon as said loan should be effected; that thereupon said John Adair the elder and Mary Ann Adair acceded to said request, and by the way of releasing said agreement made the following endorsement upon the margin of the record, to wit, 'I hereby acknowledge satisfaction in full of the requirements of the within instrument, hereby canceling the same, this sixteenth day of December, A. D. 1886,' and subscribed

their names thereto; that thereupon said defendant effected said loan and executed said mortgage, and immediately afterwards re-dated said agreement and re-delivered the same to the said John Adair the elder and Mary Ann Adair; that on or about the ninth day of April, 1888, the said John Adair the elder died on the —— day of February, 1890, at the request of the plaintiff Mary Rodney Adair, the said Mary Ann Adair executed and delivered to said plaintiff, to be delivered to said defendant, a certain instrument in writing, whereby the said Mary Ann Adair released said defendant from her liability to pay one hundred of the two hundred dollars per annum agreed by said defendant to be paid to said Mary Ann Adair in her written obligation aforesaid; * * * that said Mary Rodney Adair has paid all taxes assessed upon the lands described in said bond for deed up to this date, but that she was unable, for want of means wherewith to pay the same, to make any other payments provided for in said bond for deed from defendant Bethenia A. Owens Adair to said plaintiff as said payments matured, but on the —— day of February, 1890, the said plaintiff tendered to the said defendant the instrument of release from the said Mary Ann Adair, and at the same time tendered to said defendant the sum of five thousand one hundred and sixty-two dollars and thirty-eight cents in United States gold coin as full payment to said date of all moneys owing from said plaintiff to said defendant on account of said bond for deed, and demanded from the defendants the execution and delivery of a conveyance for the lands described in said bond for deed, and not already conveyed to said B. Wistar Morris, as above set forth, in accordance with its terms, and in addition thereto so much of the lands of the east half of the Coffinberry donation land claim as lie east of the main branch of Adair's slough, between the points aforesaid, and exceed in area so much of the Lavery donation land claim as lies west of said main branch, and ten

acres in addition thereto, on account of the error in regard to the course of the main branch of said slough, hereinbefore set forth, to compensate said plaintiff for the loss occasioned to her by the terms of said bond for deed growing out of said error; but that said defendant refused to accept said release of Mary Ann Adair or said sum of five thousand one hundred and sixty-two dollars and thirty-eight cents, or to execute to said plaintiff a conveyance for the lands covered by said bond for deed and not heretofore conveyed to said B. Wistar Morris, or for the additional tract of that portion of the east half of the Coffinberry donation land claim which lies east of the main branch of said Adair's slough between said points, and exceeds in area that portion of the Lavery donation land claim which lies on the west side of said main branch, and ten acres in addition thereto; whereupon the said plaintiff Mary Rodney Adair brings said release and said sum of five thousand one hundred and sixty-two dollars and thirty-eight cents in United States gold coin into court to be delivered and paid to the defendant Bethenia A. Owens Adair, upon the execution and delivery by her and the defendant John Adair to said plaintiff of a conveyance as provided in said bond for deed, for the lands held by the defendant Bethenia A. Owens Adair of those described in said bond for deed, and not heretofore conveyed by her to said B. Wistar Morris, as aforesaid, and of the additional tract above mentioned, as being due said plaintiff on account of the error in regard to the course of the main branch of Adair's slough, as above set forth, or upon such terms and conditions as the court may order and direct.

"That the value of that portion of the tide land purchased of the plaintiff Samuel D. Adair, which was agreed to be conveyed to the plaintiff Mary Rodney Adair by the defendant Bethenia A. Owens Adair, in her bond for deed above set forth, is four hundred dollars per acre; the value of that portion of the east half of the Coffinberry donation

XXII Or.—9.

land claim which lies east of the main branch of Adair's
slough, between said points, is three hundred dollars per
acre, and the value of the homestead entry of the plaintiff
Samuel D. Adair is one hundred dollars per acre.

"Wherefore, the plaintiffs pray a decree of this honor-
able court relieving the plaintiff Mary Rodney Adair from
her default in failing to make such payments provided for
in the bond for deed executed to her by the defendant
Bethenia A. Owens Adair, and hereinbefore set forth, as
she did not make at the time of their maturity and reliev-
ing said plaintiff from any forfeiture she may have in-
curred under the terms of said bond for deed in the matter
of the redemption of the lands therein described. or any
part thereof; and amending and correcting said bond for
deed so as to make the same conform to the understanding
of the plaintiffs and defendants, at the time the same was
executed and accepted as to the course of the main branch
of Adair's slough, and that it may be considered as ex-
tended to cover all that portion of the east half of the
Coffinberry donation land claim which lies on the east
side of the main branch of said slough between said points
A and B, and exceeds in area so much of the Lavery dona-
tion land claim as lies on the west side of said main branch
between said points and ten acres in addition thereto,"
etc., etc.

The court below allowed a motion to strike out part of
the foregoing complaint, and then sustained a demurrer to
the residue on the ground that the facts stated do not con-
stitute a cause of suit, and entered a decree dismissing the
suit, from which this appeal is taken.

*John H. Smith,* and *Cox, Teal & Minor,* for Appellants.

*W. W. Thayer,* for Respondent.

STRAHAN, C. J.—This is a suit to enforce the specific
performance of a written agreement to convey land. The
questions presented for our consideration on this appeal

arise out of the defendants' motion to strike out certain portions of the complaint and the demurrer to the residue; but we prefer to reach the merits of the case, so far as possible, aside from the mere forms of pleading.

The first question to which we think it necessary to direct our attention is, the nature of the title held by the defendant Bethenia A. Owens Adair to all the lands attempted to be conveyed to her by George H. Mendell and wife. Mendell's title, derived from the Adairs, though in the form of an absolute deed, was designed and intended by all the parties to it as a mortgage to secure the payment of money; and the defendant Bethenia A. Owens Adair took the conveyance from him with full knowledge of these facts, but with a further agreement on her part that she would hold the same subject to the same terms and conditions under which Mendell had previously held the same.

It is too well settled in this state to admit of any kind of controversy, that a deed, though absolute in form, if intended by the parties to it as security for money or the performance of any other lawful act, is a mortgage. (*Hurford* v. *Harned*, 6 Or. 362; *Stephens* v. *Allen*, 11 Or. 188; *Albany & Santiam W. D. Co.* v. *Crawford*, 11 Or. 243; *Wilhelm* v. *Woodcock*, 11 Or. 518.) And it is equally as well settled that a mortgage vests no title in the mortgagee, but is a mere security. (*Anderson* v. *Baxter*, 4 Or. 105; *Sellwood* v. *Gray*, 11 Or. 534.)

And this does not depend on the form of the conveyance, but upon the real character of the instrument. It is believed to be the better doctrine, that if a deed absolute in form be made merely to secure an indebtedness, it is a mere mortgage, and does not pass the legal title. (*Smith* v. *Smith*, 80 Cal. 323; *Hall* v. *Arnott*, 80 Cal. 348; *Booth* v. *Hoskins*, 75 Cal. 271; *Raynor* v. *Drew*, 72 Cal. 307; *Healy* v. *O'Brien*, 66 Cal. 517; *Taylor* v. *McLain*, 64 Cal. 513; *Murdock* v. *Clarke*, 90 Cal. 427; *Lane* v. *Shears*, 1 Wend. 434; *Peugh* v. *Davis*, 96 U. S. 332; *Odell* v. *Montross*, 68 N. Y.

499; *Brinkman* v. *Jones*, 44 Wis. 498; *Howe* v. *Carpenter*, 49 Wis. 697.)

The first part of this proposition having already been adopted in this state, the second is a logical sequence, and must follow the first. The result of these conclusions is, that the defendant acquired no title to the real property attempted to be transferred to her by Mendell, nor to the other lands attempted to be conveyed as security, and which she was to hold for the same purpose as the Mendell lands. The deeds to her, though absolute in form, under the allegations in the complaint, which, for the purposes of the suit the demurrer admits to be true, are mortgages, and she acquired no title in the land by virtue thereof which she could transfer or assign without foreclosure. Under this state of facts, a decree for a specific performance would be ineffectual. The plaintiff could not by such decree obtain the title which the defendant agreed to convey. In such case it is the settled practice of courts of equity to refuse a decree which it would be utterly unable to enforce.

In *Franz* v. *Orton*, 75 Ill. 100, it was held that when a party purchasing land of one clothed with the legal title, has notice, actual or constructive, that another owns it, and that the vendor holds the legal title as security for money owing him and others, he cannot be placed in a better position than the vendor, and a court of equity will refuse to enforce the specific execution of his contract of purchase. So in *Love* v. *Cobb*, 63 N. C. 324, it was held that where one bargains for the land of another, who, as he knows, has only an equitable title, upon the latter being unable to procure a title by the refusal of his bargainor to convey, he is not bound to a specific performance of his contract. And in *Hill* v. *Fiske*, 38 Me. 520, it was held that an agreement in writing to procure for the plaintiff a good and sufficient deed of a certain tract of land, the title of which was not in the respondent, and that was known to the plaintiff, lays no foundation for a court of equity to decree

a specific performance of the contract. In disposing of this case, the court said: "It is obvious, when the party contracting has no title to the land agreed to be conveyed, that there is nothing upon which a decree for a specific performance can operate." So also in *Shields* v. *Trammell*, 19 Ark. 51, it was held that a specific performance of a contract for the conveyance of land would not be decreed when the vendor has no title, or has, since the contract, conveyed the land to a stranger without notice.

In *Ferrier* v. *Buzick*, 2 Iowa, 136, it was held that courts of equity will decree parties to perform that which in legal contemplation they are able to perform, and not that which it is manifest they have no legal power to carry out; and if the decree is to be void and imperfect, and cannot be performed, a specific performance ought not to be decreed. And in *Brueggeman* v. *Jurgensen*, 24 Mo. 87, it was held that there was no equity for specific performance of a contract to convey land where the party against whom such equity is asserted has rendered a specific execution on his part impossible by conveying said land to a third person. And *Morss* v. *Elmendorf*, 11 Paige Ch. 277, is to the same effect.

In fact, our attention has not been called to a single case in which the vendee obtained any relief where the vendor was without title at the commencement of the suit, and the vendee knew the state of the title at the time. We think probably the plaintiff in this case is entitled to recover back the money, with interest, which she paid on the contract, as well as for permanent improvements on the premises after she went into possession; but we are unable to satisfy ourselves that we have any authority to consider or decide that question in this case. The authorities seem to be to the effect that the only decree we can render in such case is to dismiss the suit, leaving the injured party to pursue such remedy at law as he may be advised. ( *Morss* v. *Elmendorff*, supra; *Hill* v. *Fiske*, supra; *Kempshall* v. *Stone*,

5 Johns. Ch. 193; Pomeroy Spec. Perf. Contr. § 475; Waterman Spec. Perf. Contr. § 516.)

These conclusions would lead to an affirmance of the decree, but my associates think the case may be treated as a suit to redeem. As to that I express no opinion, but reverse the decree and remand the cause to be further proceeded with in accordance with the opinion of my associates.

BEAN, J.—I am of the opinion, that while in form this is a suit for the specific performance of the contract of sale from Mrs. Owens Adair to Mrs. Rodney Adair, it is in effect nothing more than a suit for the redemption of the land from the lien of her mortgage, and to declare the lien discharged and the mortgage satisfied. (*Miller* v. *Thayer*, 74 Cal. 351.)

The facts are fully set forth in the complaint, and to my mind clearly show a case for equitable relief, which should be granted in this suit. The transaction between the parties, it is conceded, amounted to nothing more than a security for the payment of the debt of Samuel D. Adair to Mrs. Owens Adair; and the agreement on her part to re-convey the land to Mrs. Rodney Adair, by his direction upon payment of the debt, did not in any way change the nature of the transaction, or make it any the less a mortgage. Equity looks to the substance, and not to the form; and "if a transaction resolves itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a mortgage." (*Flagg* v. *Mann*, 2 Sumn. 486.)

While the agreement of Mrs. Owens Adair to convey the land to Mrs. Rodney Adair, upon the payment of Samuel D. Adair's debt, cannot, in the strict sense of the term, be denominated a defeasance, it is a means mutually agreed upon by the parties whereby the representative of the original grantor could recover what was justly his own. The terms upon which redemption might be had were

somewhat modified, it is true, and some new features were introduced, but the essential character of the obligation resting upon Mrs. Owens Adair, who held the lands only as security, to restore them to the rightful owner, or his representative, upon payment of the debt for which they stood pledged, was unchanged. I think the parties had a right to substitute Mrs. Rodney Adair for Samuel D. Adair, and the fact that an obligation for a re-conveyance ran to her instead of him, is wholly immaterial. (1 Jones, Mortg. § 241; *Flagg* v. *Mann,* 2 Sumn. 486; *Jeffery* v. *Hursh,* 58 Mich. 246; *Martin* v. *Pond,* 30 Fed. Rep. 15; *Pardee* v. *Treat,* 82 N. Y. 385.)

But whether this be true or not, is of no consequence in this suit; for he is a party plaintiff, and asking relief herein, and will be bound, so far as the defendant is concerned, by any decree which may be made. As the case is presented, it is conceded that the defendant Mrs. Owens Adair only has a lien upon the land to secure the payment of a certain sum of money, which was duly tendered to her before the commencement of this suit, and that the only persons who can claim the right to redeem or to a re-conveyance from her are joined as plaintiffs and demanding relief herein; and yet it is said they are without relief in a court of equity, because the defendant does not have the legal title to the land which she agreed to convey. We have nothing to do with the legal title, or whether Mrs. Owens Adair can convey a perfect or any title, but the question here is, whether she shall be compelled to accept the amount of the debt for which she holds the land as security and release or discharge her lien by re-conveying her interest if any in the land to the party to whom she agreed to so re-convey. I am clearly of the opinion she should; and this case ought to be reversed and remanded to the court below, so that the questions of fact, if any, can be tried out.