[Civil No. 1445.   Filed June 1, 1915.]

[149 Pac. 59.]

## ANDRES REBEIL, Appellant, v. L. H. MANNING, Appellee.

SUBSCRIPTIONS—CONSTRUCTION—"ACTUAL PURCHASE."—Defendant was one of several property owners who would be benefited by the erection of a federal building near his land. The appropriation for the acquisition of a site was not sufficient to purchase the premises desired, and adjoining property owners agreed to raise the difference. Defendant, on the express condition of an actual purchase of the property for a federal building site within one year, agreed to pay a certain amount to the building committee. *Held,* that the term "actual purchase" means present purchase or executed sale, and an agreement by the government to accept the offer of the committee on condition that the sellers furnish an abstract of title within a limited time was not a compliance.

APPEAL from a judgment of the Superior Court of the County of Pima. Wm. F. Cooper, Judge. Reversed and remanded.

Mr. John B. Wright, for Appellant.

Mr. John H. Campbell, for Appellee.

ROSS, C. J.—The facts out of which this suit grew are briefly as follows: In 1910 the Congress of the United States appropriated $15,000 to purchase a building site for a federal building in the city of Tucson. As is usual in such cases, a contest among local property owners to have the site adjacent to their holdings was inaugurated. The site finally selected by the federal authorities was the one presented by the parties to this litigation and others similarly affected. The owners of the property demanded of the government, as its price, the sum of $42,800 and as the proposed purchaser had but $15,000 to be applied for that purpose, it became necessary to raise the difference of $27,800 by subscriptions from those whose property, because of its proximity to the proposed site, would be benefited by increased values. The appellant owned a lot contiguous to the proposed site, and was one of

those interested in making the sale to the government. Negotiations for the sale and purchase of the lot in question were begun in July, 1910, and were carried on thereafter by a committee composed of appellee, F. Ronstadt and John Mets, representing the citizens particularly interested. In April, 1912, when it appeared probable that the sale would be effected, a subscription paper was circulated among those interested, to which all, except appellant, subscribed to pay toward raising the sum needed. Appellant refused to sign the general subscription, but made out and mailed to one of the committee the following instrument:

"Tucson, Arizona, Apr. 4, 1912.

"Upon the express condition of the actual purchase by the United States government, for a federal building site, of a strip of land 160 by 147 feet off the extreme southeast corner of block 208 two hundred and eight as per Foreman's survey of the city of Tucson within one year from date hereof, time being the essence of this obligation, I hereby promise to pay to the order of Fred Ronstadt, trustee, the sum of $1000.00, one thousand dollars, payable four months after the consummation of the purchase by the United States government of the above mentioned site, under conditions herein expressed.

"Tucson, April 4, '12.

"ANDRES REBEIL."

Across the face of such instrument was this indorsement:

"Accepted subject to conditions herein expressed.

"F. RONSTADT."

On September 17, 1912, the government formally accepted the offer of sale by the committee, providing that within 60 days the sellers furnish an abstract of title that would be approved by the attorney general of the United States. Because of the numerous owners of the proposed site and a mortgage on a part thereof, the committee was unable to furnish abstract and deeds of conveyance, as required by the government, until in April, 1914, when the government paid the purchase price of $15,000 and accepted the deeds of conveyance tendered it by the committee. The instrument executed by appellant was assigned to appellee, who instituted this suit to recover thereon the amount specified in the agreement. The appellee had judgment, from which this appeal is prosecuted.

The question to be decided is one of law, the construction of a written·contract, to which the parties hereto subscribed their names and gave their mutual assent. The construction turns on the meaning to be given to their language. The controversy arises over the words "actual purchase," contained in the contract. The appellee contends that, when the government on April 17, 1912, accepted the offer to sell by the committee, there was, within the terms of the contract, an "actual purchase" of the property by the government, whereas the appellant contends that the words mean an executed sale, and inasmuch as there was no executed sale, until April, 1914, he insists that he is, by the very terms·of his contract, exonerated from liability. Of course the acceptance by the government of the committee's offer initiated rights and liabilities enforceable under the law. On the one hand, there was·a contract to sell, and on the other, a contract to purchase the property subject to title, etc. In common parlance such a transaction might be referred to ·as a purchase or sale. · Uncompleted deals not infrequently are thus characterized, and we may assume that the parties to the agreement here involved were cognizant of that fact, and sought by the use of apt ·words to avoid such a construction of their contract. This contract obligated the appellant to pay $1,000 upon the express condition that the government actually purchased the property within one year from April 4, 1912, and made time of the essence of the obligation. 1 Corpus Juris, page 1182, defines "actual" to mean "real; present; visible; existent; existing at the ·time; existing in fact. In legal phraseology 'actual' is something real in opposition to constructive or speculative; something existing in fact."

In *Kramer* v. *Wilson,* 49 Or. 333, 90 Pac. 183, it is said:

"An actual sale is the transfer of property from one person to another, and includes the actual and complete transfer of the title. A conditional·sale of land is a purchase for a price paid, or to be paid, to become absolute in the purchaser on the occurrence of a particular event. . . . "

The words "actual purchase or sale" occur in the Massachusetts ·statute concerning transactions of brokers with their customers, and the court, in *Fiske* v. *Doucette,* 206 Mass. 275, 92 N. E. 455, said:

XVII Ariz.—8

"Actual purchase or sale means, in this connection ·a real and tangible transfer of a full and complete title to an existing, defined, and certain security or commodity."

It was decided in *Idaho ·Implement Co.* v. *Lambach,* 16 Idaho, 497, 101 Pac. 951 (quoting from the syllabus) that:

"The distinction between an actual sale or a mere executory agreement to sell personal property is that in·the former the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded, . . . while in the latter·the goods remain the property of the seller till the contract is executed."

The committee within the time limit of one year, as fixed by the contract of appellant, had secured ·a "mere executory" contract of purchase from the government, and nothing more. We think the language used in the contract clearly imported an exchange of purchase price and title deeds, ·a fully executed contract, before appellant could be held to pay the amount stipulated, and that an "actual purchase" as used in the contract means a change of ·title from the sellers to the purchaser, or at least a more substantial transfer of title than a mere conditional agreement to purchase, as in this case, which might or might not be consummated ·according as the title offered was approved by the attorney general of the United States or not.

It may seem·unfair and inequitable that the appellant, who was greatly benefited in having the federal building located so near his property, should be relieved from bearing his part of the burdens, while others receiving like benefits contributed to their means·to secure the location of the structure at the desired place, but it must be borne in mind that there was no legal obligation on the part of anyone to contribute, and that those who did so did it voluntarily, ·and that if appellant desired to hedge around his offer restrictions and conditions, harsh or otherwise, he had the right to do so. The courts are powerless to make contracts for parties; their province being confined to the construing of contracts made by the parties themselves.

Judgment is reversed, with directions that the complaint be dismissed.

FRANKLIN and CUNNINGHAM, JJ., concur.