[Civil No. 2759.   Filed December 17, 1928.]

[272 Pac.   921.]

FRANK   RODRIQUEZ   and   THE   O'MALLEY
LUMBER   COMPANY   a   Corporation,   Appellants,   v.   PEARL   CHILDRESS,   Appellee.

490

Mr. C. F. Ainsworth, for Appellants.

Mr. Herman Lewkowitz and Mr. J. B. Zaversack, for Appellee.

LOCKWOOD, J.—On December 7, 1924, Pearl Childress, hereinafter called plaintiff, was the owner of certain property situate at Washington and Ninth Streets, in Phoenix, Arizona. The dwelling-house on this property had been partially destroyed by fire, and she borrowed from the Dwight B. Heard Investment Company, hereinafter called the company, the sum of $2,500, and entered into a contract with Frank Rodriquez, hereinafter called defendant, for the repair of the building, the contract price being $1,595. The execution of the contract was guaranteed by a bond in the sum of $500, with Rodriquez as principal, and O'Malley Lumber Company, a corporation, hereinafter called the surety, as surety thereon. It was understood by the plaintiff and the company that the proceeds of the loan were to be paid out by the latter under the instructions of the plaintiff. Various sums were so paid, beginning with December, 1924, until the 28th of February, 1925, when there was a balance due plaintiff on the loan of $10.92. Of the total amount of the contract price, $1,585 had then been paid, leaving a balance due him of $10, the remainder of the loan having been expended for taxes, repairs of various sorts, and some payments direct to plaintiff. Shortly after the final payments had been made, plaintiff claimed that Rodriquez had not completed his contract in accordance with its terms, and that she had not authorized the last payment of $585 to him. After some discussion with the agent of the company, it paid her the further sum of $150, at which time she signed and gave it a receipt in the following language:

"Received of Dwight B. Heard Investment Company the sum of One hundred fifty ($150.00) dollars, in full satisfaction of all claims against said Dwight B. Heard Investment Company arising out of that certain loan from said company to me, dated December 7th, 1924, or out of the disposition of the proceeds of said loan or out of that certain agreement between Frank Rodriquez and myself for work on my house situate on the northwest corner of Washington and Ninth Streets, Phoenix, Arizona."

"[Signed]   PEARL CHILDRESS."

On March 15, 1927, and more than a year later, plaintiff brought this suit, claiming that Rodriquez had failed to complete his contract, and that she was compelled to spend $703.57 over and above the contract price to perform the work which Rodriquez had agreed to do. The case was tried to a jury, which returned a verdict in the following language:

"We, the jury, duly empaneled and sworn in the above entitled action upon our oaths do find for the plaintiff and against the defendant, Frank Rodriquez, in the sum of Fifty ($50.00) Dollars, and against the defendant, O'Malley Lumber Company, in the sum of Five Hundred ($500.00) Dollars. We have found for the plaintiff with the amount of Seven Hundred ($700.00) Dollars, from which the evidence shows has already been paid the plaintiff One Hundred Fifty ($150.00) Dollars."

The court refused at first to receive this verdict as not being in accordance with the law, and sent the jury back to reconsider it, but they returned again with the same verdict, whereupon the court did receive it, entering judgment against defendant in the sum of $550, and against the surety in the sum of $500, together with the costs. After the usual motion for new trial had been made and overruled, this appeal was taken.

There are some six assignments of error, but we shall discuss them in accordance with the legal propo-

sitions raised thereby. The first is that the evidence was not sufficient to sustain a verdict for plaintiff. This is based on the theory that the written receipt in question showed conclusively that it was a complete accord and satisfaction, as between the parties, of all matters which were the subject of the lawsuit. It is contended that the receipt in question can be construed as a matter of law in no other way, and that, since it was not claimed by plaintiff that it was secured through any fraud or misrepresentation, she is bound thereby. It is the law in this jurisdiction that the construction of a written contract, plain and unambiguous on its face, is for the court, and not for the jury. *Merchants & Stock Growers Bank* v. *Marley,* 33 Ariz. 294, 264 Pac. 471; *Kreig* v. *Hammels,* 29 Ariz. 280, 240 Pac. 1031; *Rebeil* v. *Manning,* 17 Ariz. 111, 149 Pac. 59; *Wadin* v. *Czuczka,* 16 Ariz. 371, 146 Pac. 491.

If, therefore, the receipt in question is an accord and satisfaction between plaintiff and defendant, the court should have instructed a verdict for defendant. We think, however, the receipt is not to be so construed. It appears from the evidence that there was a dispute between plaintiff and the company as to the making of the last payment of $585 to defendant, plaintiff claiming that it was unauthorized, while the company insisted she had approved it. It will be seen, on examining the receipt carefully, that it was given to the company, and not to defendant or his surety, and expressly states that it was "in full satisfaction for all claims *against said Dwight B. Heard Investment Company,*" arising out of either the loan or the disposition of the proceeds thereof, or the contract. It was not an accord and satisfaction as between plaintiff and defendant of anything, but rather an accord and satisfaction between plaintiff and the company for the proper disposition of the proceeds

of the loan made by the latter. It is true that in the receipt the contract is mentioned, but Rodriquez is not released for anything therein; it is only the company that is released. The court instructed the jury that, if they found "by reason of a contract between plaintiff . . . and the . . . company . . . she received that $150.00 in full settlement of any claim that she had under the Rodriquez contract," plaintiff could not recover. If the court erred in submitting the receipt to the jury, it was therefore an error in favor of defendant rather than against him, and he cannot complain.

The second and more serious question is whether the verdict was one which can legally be sustained. There is, of course, no possible question that the verdict of the jury literally construed, was contrary to law. No verdict can stand against a surety for a greater amount than against his principal. Plaintiff concedes this, but claims the last sentence of the verdict shows the true intent of the jury, and that the court rendered judgment in accordance with such intent. It is true that, if we consider only the last sentence of the verdict, and disregard the first, it might be held that it is a general verdict for $550, and that the court in such cases will render judgment for the full amount of the verdict against the defendant, and the amount of the bond against his surety. This is done, however, by disregarding entirely the first sentence. On examining the instructions of the court, we are of the opinion that one of those instructions, although perfectly intelligible to members of the legal profession, in all probability misled the jury entirely as to the law, and caused them to return the verdict which they did. While the difference between the obligation of the maker of a contract of indemnity or insurance and of the surety on a bond is plain to the legal mind, it is not so

obvious to the layman. There are many who believe that, when a judgment is recovered on an obligation secured by a bond, the surety on such bond is primarily responsible for the full amount of his bond, leaving only the excess of the judgment over the penalty of the bond to be paid ultimately by the principal to the obligation. This, of course, is true eventually (though not necessarily immediately) of a contract of indemnity or insurance, but not of a bond like the one herein. The first sentence of the verdict is intelligible only on the theory that the jury believed in the erroneous doctrine above set forth, and we think the logical construction of the verdict, taken as a whole, is that the jury understood the liability of the bondsman to be that of an indemnitor instead of a surety, and therefore returned the verdict which it did.

The trial court, when it refused to accept the verdict, undoubtedly was of the opinion that such was its meaning, and correctly ordered the jury to return and reconsider it. Upon their returning again with the same verdict, which emphasized the view that the defendant was only liable for $50 of the total damage suffered by plaintiff, while his bondsman was primarily liable for the $500, the court was not justified in receiving it. Nor could the court render on such a verdict a judgment based on what it thought the jury should have done, or would have done if they had understood the law. The judgment of the superior court of Maricopa county is reversed, and the case remanded for new trial.

ROSS, C. J., and McALISTER, J., concur.