## J. E. HURFORD, RESPONDENT, *v.* JAMES J. HARNED AND CARRIE E. HARNED, APPELLANTS.

PAROL EVIDENCE.—Parol evidence is admissible for the purpose of showing that a deed absolute on its face was in fact intended as a mortgage.

PRESUMPTIONS, IN FAVOR OF FAIR DEALING.—When any transaction is equally susceptible of two explanations, one of which is that it is fraudulent, and the other is consistent with good faith and fair dealing, that explanation will be preferred which is consistent with good faith and fair dealing.

APPEAL from Multnomah County.

This suit was brought to set aside a deed, absolute on its face, and have it declared a mortgage.   Respondent, Hurford, and one Francis, were in business as partners in a music store in Seattle, W. T.   Hurford's health was poor and the business was not very prosperous, but the concern was not insolvent.   The partnership was closed, and a debt of Gray & Co., of San Francisco, amounting to one thou-

sand two hundred and sixty-four dollars, was presented for collection. Appellant Harned was a merchant in Portland, a member of the firm of A. F. Smith & Co., and his wife was Hurford's niece. Hurford went to Harned for temporary assistance in paying off the one thousand two hundred and sixty-four dollars until the money could be made on the stock of goods at Seattle, and offered Harned security on the property in question. Harned got a deed and had it made to his wife as security for his assistance. Harned made advances and assisted Hurford, but in five weeks the one thousand two hundred and sixty-four dollars and all debts were paid off, in full, from sales from the stock of goods.

The court below decreed the relief prayed for.

*J. C. Moreland and J. F. Caples*, for appellants.

*Gibbs & Stearns and W W Thayer*, for respondent.

By the Court, WATSON, J.:

Before looking into the evidence in this case, it is necessary that we notice a question of law, which affects the right of plaintiff to maintain this suit, under any view we may take of the evidence.

It is contended by counsel for the appellant that under the statute of frauds of this state it cannot be shown by parol evidence that a deed absolute on its face was in fact intended as a mortgage. Were this a new question in this court, it would merit a very careful consideration. But it is not a new question. This court had occasion to decide it in the case of *Smith* v. *Lampson*, decided at the December term, 1875, of this court. That case was thoroughly presented by able counsel, and the court, after a patient and thorough examination of the question, decided that such evidence is admissible for that purpose. The question being thus authoritatively settled by this court, we are not disposed to re-open it. The transcript presents no other question of law which is disputed. The only important questions are questions of fact, to be decided by us upon the evidence.

The complaint is based on the theory that the deed de-

scribed in the pleadings from plaintiff to defendants, although on its face an absolute conveyance, was intended in fact as a mortgage to secure the defendant, J. J. Harned, from loss by reason of certain advances which he was about to make for plaintiff, in order to relieve him from business difficulties in which he had become involved by a partnership in a music store at Seattle, W. T. That the deed was made to defendant, Carrie E. Harned, in trust, to hold the legal title to the real property therein described until her husband should be repaid for his advances, when she was to reconvey the premises to the plaintiff. That after the execution of the deed the advances were all repaid by a sale of the partnership assets at Seattle, but that defendant, Carrie, refuses to reconvey the premises.

The defendants, in their answer, while they admit that they received the deed for a merely nominal consideration, deny that it was in any way intended or received as a mortgage to secure the repayment of the advances made by J. J. Harned for plaintiff, but claim that he was fully secured for these advances by plaintiff's putting the partnership effects in the store at Seattle, in the hands of C. F. Shepherd, who was a partner with defendant, J. J. Harned, authorizing him to sell the same and pay off all such advances. They admit that all of said advances were repaid in a short time from sales made by Shepherd. They then allege that the deed made by plaintiff to Carrie E. was intended as a gift of the property thereby conveyed from plaintiff to Carrie E., who was his niece and to whom he was greatly attached. There is a direct conflict in the evidence; plaintiff and his wife both swearing that the deed was made and accepted in trust to secure the advances made by J. J. Harned, and defendant, Carrie E., swears just as positively that it was not made or received in trust for any purpose, but was a gift to her.

After a careful examination of the evidence, we think that the defendant Carrie is not sustained in her theory that the property was a gift to her. She swears to it, it is true; but both plaintiff and his wife contradict her, and she is contradicted by her own admissions made to Mrs. Sparrow, to

Rev. Wm. Roberts, and which she swears she made to Gov. Abernethy, all to the effect that the property was not hers, and that she held it in trust. We think also that the evidence proves conclusively that she received the property in trust, and with an understanding that she would some time reconvey it to plaintiff.

The question then presents itself, was this trust merely to hold the property until defendant J. J. Harned should be repaid his advances, being in effect a mortgage, or was it a fraud or intended as a fraud upon the creditors of plaintiff. If it was such mortgage defendants ought to be decreed to reconvey it. On the other hand, if it was intended to delay or defraud plaintiff's creditors, it is not in the power of courts of equity, consistent with their established rules, to relieve him.

The property must, as far as the parties are concerned, be left where their fraud placed it. It may be a hard case that this old man, who in a groundless panic, perhaps overcome by the timidity and irresolution of age, should have made a conveyance to those of his own blood whom he trusted, in order to delay his creditors, when he had left unassigned property amply sufficient to pay every dollar he owed, and that his confederates in this fraud, far more blamable than he, should betray him, and with coldblooded selfishness, strip him of his home, for which they did not pay a dollar, because he was weak and foolish, and trusted them, but *ita est lex.* We cannot change the law, because to enforce it will work a hardship.

We will proceed to examine the evidence on this point. In the outset it may be premised that a court of equity will never presume fraud when the transaction under their investigation is equally susceptible of two explanations, one of which is consistent with a fraudulent intent, and the other with good faith and fair dealing. In such case that construction of the acts of the parties which is consistent with good faith and fair dealing will be preferred.

In this case plaintiff and his wife both swear that the deed was intended as a mortgage. It appears from the admission of defendant, Carrie E., that she received and held the

property in trust, and that she was to reconvey it. Between the presumption that this was a fraudulent trust, and that it was a mortgage, as sworn to by plaintiff and his wife, we adopt the more charitable view of the evidence, and that also which is the more in accordance with natural justice, that Carrie E. did receive the conveyance in trust, but that such trust was only to hold the property until her husband should be reimbursed his advances made for plaintiff.

We may add that in weighing the evidence of Mr. Killin, in regard to admissions of plaintiff, we have taken into account the age of the plaintiff, his excitement at the time, and that while his statement that his intentions were to compel his creditors to go to Seattle to make their money, and to prevent them from making their money out of the Portland property, is some evidence tending to show a fraudulent intention in making the conveyance, we have not overlooked the fact that Killin merely gives his impressions of what was said, and does not pretend that he gives the words of plaintiff. It is also a fact to be taken in connection with this evidence, that at that time plaintiff had made an arrangement to have the debts paid by a sale of the partnership property at Seattle, and that he had made with defendant, J. J. Harned, an arrangement by which his partner, Shepherd, took charge of that property and applied it for that purpose. This may well have been the meaning of plaintiff in the conversation with Killin. Killin, angry as he swears he was, and not knowing of this arrangement, may have attributed all that was said to the deed in controversy.

It follows that the decree of the court below must be affirmed.