Decided January 7, modified March 24, rehearing denied April 8, to recall
mandate denied August 11, 1908.

# ELDRIEDGE v. HOEFER.

[93 Pac. 246; 94 Pac. 563; 96 Pac. 1105.]

INFANTS—DECLARATION OF TRUST—VALIDITY.
1. A minor's declaration of trust is valid until avoided.

MORTGAGES — ABSOLUTE DEEDS AS MORTGAGES — EVIDENCE —ADMISSI-
BILITY.
2. A deed, absolute in form, will be decreed a mortgage, where it was
executed to secure the payment of a debt or the performance of an obliga-
tion, and such intention may be established by parol.

SAME—REDEMPTION—PERSONS ENTITLED.
3. Plaintiff, a minor, desiring to purchase land owned by his deceased
father, and about to be sold to pay debts of the estate, but having no means,
applied to defendant for the loan, who furnished the money pursuant to an
arrangement whereby the land was conveyed to a third person, and by him
to defendant. In the transactions, the third person was plaintiff's trustee,
and his deed to defendant was executed to secure the money advanced.
*Held*, that the deed from the third person to defendant, though absolute in
form, was a mortgage, and a subsequent quitclaim deed by the third person
to defendant did not transfer plaintiff's equitable estate, and plaintiff was
entitled to redeem by paying the sum loaned with interest, etc., less the
sums he might be able to show by a preponderance of the evidence that he
had paid on account of the debt, and the rents and profits which defendant
received, as mortgagee in possession.

SAME—SUIT TO REDEEM—TENDER.
4. Since the law does not impose the performance of a vain thing as a
condition precedent to a right, a plaintiff, in a suit to redeem land from a
mortgage lien, who alleges that he notified defendant of an offer for the land,
and that he would pay defendant the sum admitted to be due on the mort-
gage, if defendant would permit a redemption of the premises, and that
defendant refused to comply therewith, need not allege a tender of the sum
conceded by him to be due to entitle him to the equitable relief.

SAME—INCIDENTAL DAMAGES.
5. Plaintiff prayed that a deed, absolute in form, conveying land to defen-
dant, be adjudged a mortgage, and that he be permitted to redeem, and
claimed damages resulting from his inability to furnish title to a purchaser
who offered to pay a specified sum for the land. He did not tender the sum
conceded by him to be due to defendant, secured by the deed. *Held*, that
plaintiff could not recover the damages in the absence of a tender.

PLEADING—REPLY—ADMISSIONS.
6. A reply denying, on information and belief, that the sums stated in the
answer as the amounts of rent received from premises were the only amounts
received as rent, and averring that, if defendants secured no greater sums
than alleged, it was because of their neglect in management, admits that
defendants received as rent the sums stated, and hence they were not
required specifically to prove the same, and the burden of showing that
greater amounts were received than alleged was assumed by plaintiff.

APPEAL AND ERROR—RECALLING MANDATE—RELIEF.
7. A petition to recall a mandate, which seeks the relief sought by a peti-
tion for rehearing, which was denied, is properly denied.

MORTGAGES—MORTGAGEE IN POSSESSION—RIGHT TO LEASE.

8. A mortgagee in possession is not justified in making long term leases, as he cannot bind the estate beyond his possession, and the time of his occupancy is contingent, and he is under no obligation to do so even with the consent of the mortgagor.

SAME—REDEMPTION.

9. Where a mortgagor leased the premises, and the tenant paid the agreed rent to the mortgagee, the mortgagor, in a suit to redeem, could not insist that the mortgagee should account for a greater rental.

From Marion: GEORGE H. BURNETT, Judge.

Suit by F. J. Eldriedge, to have a deed, absolute in form, decreed to be a mortgage. From a decree in favor of plaintiff, defendant appeals. REVERSED.

For appellant there was a brief and oral arguments by *Mr. George G. Bingham* and *Mr. Peter H. D'Arcy.*

For respondent there was a brief over the names of *Carson & Cannon, T. G. Hailey,* and *L. K. Adams,* with oral arguments by *Mr. Thomas G. Hailey, Mr. A. M. Cannon,* and *Mr. Loring K. Adams.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is a suit by F. J. Eldriedge against John Hoefer and Casper Zorn, partners as Hoefer & Zorn, and David M. Keene, to have a deed, absolute in form, of certain real property, decreed to be a mortgage and Keene declared to be plaintiff's trustee; that a redemption of the land be allowed, within a reasonable time, on the payment of $14,600, the sum admitted in the complaint to be due from the plaintiff to Hoefer & Zorn, but if such payment cannot be made within the time limited, that the premises be sold, and if the sum realized therefor does not equal $42,000, the price which it is alleged was offered for the land, that Hoefer & Zorn be required to account for that sum, less the debt so specified.

The admitted facts are that plaintiff's father died seised of two farms situated in Marion County, containing 728.89 acres, whereupon his mother was appointed and duly qualified as administratrix of the decedent's estate, to pay the debts of which it became necessary to sell

the real property. The plaintiff, desiring ·to purchase
the land, but not having the means with which to pay
for it, applied to Hoefer & Zorn for ·a loan of money
for that purpose, but they declined the request because
he was not then of age, and for the further reason that
his mother held a dower interest in the premises. Mrs.
Eldriedge, at plaintiff's request, executed a deed of such
life estate to Keene, who, at a sale of the land by the
administratrix, bid therefor $14,577.80, to pay which
he borrowed from Hoefer & Zorn $15,600, giving his
promissory note for that sum, payable in five years from
October 10, 1892, with interest thereon at the rate of 7
per cent per annum, payable yearly, and also stipulating
in the note to pay all taxes that might be assessed against
it. The sale by the administratrix having been con-
firmed, she executed a deed of all the estate the decedent
had in the land at the time of his death to Keene, who
immediately conveyed the premises to Hoefer & Zorn,
taking from them a bond for a deed, wherein they cove-
nanted to reconvey the land to him on the payment of
the note. No part of the taxes assessed against the note
having been paid to Hoefer & Zorn, Keene, on January
25, 1896, executed to them a quitclaim deed of the·
premises, without securing a surrender of the note or
the indorsement of any payment thereon as a considera-
tion for the conveyance, and in August, 1905, this suit
was instituted.

The complaint states the facts in detail, the substance
of which is hereinbefore set forth, and avers, in effect,
that at the time the money was so loaned it was agreed
by all the parties hereto, that in all the transactions men-
tioned Keene was plaintiff's trustee, which fact was
assented to by Hoefer & Zorn, and that the original deed,
executed by Keene to Hoefer & Zorn, was given to secure
the payment of the promissory note, and the bond taken
as a defeasance; that when the land was sold to Keene
the plaintiff took immediate possession of the premises,

which he retained until October, 1893, when he leased the real property, ever since which his tenants had been in possession thereof; that the plaintiff paid the interest on the note for the first three years after it was given, and in October, 1895, he also paid $1,000 on account of the principal; that about the date last mentioned the plaintiff, desiring to make certain improvements on the land, so as to increase the profits therefrom, and to pay the cost of such betterment from the income received from the premises, entered into an agreement with Hoefer & Zorn whereby they stipulated to accept the rents of the real property in full payment of the interest and taxes, and each year thereafter they received the landlord's share of the crops annually raised on the premises, pursuant to such agreement; that in July, 1905, the plaintiff was offered for the land $42,000, which sum would then have been paid for the premises, if he could have given a sufficient deed therefor; and that, upon receiving such bid, he notified the defendants thereof, in writing, and demanded that he be permitted to redeem the real property by paying the sum of $14,600, but they refused to comply with his request and would not join him in executing a deed of the land.

The answer denies the material allegations of the complaint, and that any payments were made on the promissory note prior to January 25, 1896, except $509.50, which sum is the value of grain delivered the preceding year to the defendants; and states that Keene, being unable to pay the note or the interest thereon, and desiring to be relieved from such obligation, executed, with plaintiff's knowledge and consent, a deed of the premises to Hoefer & Zorn in full payment and discharge of the note; that upon the receipt of such deed Keene delivered the possession of all the real property, particularly described in the complaint, to Hoefer & Zorn, who, on April 20, 1896, leased the land to one F. Goffin, and the latter thereafter, and until the commencement of this

suit, paid to them the rents, profits, and income of the premises, setting forth the value thereof each year from 1896 to 1904, inclusive, amounting to $6,902.72, and averring that the estimated rent for 1905 was equivalent to $682.62; that Hoefer & Zorn paid the taxes for the years 1892 and 1893, the amount of which they could not state, but approximately $250, and that they also paid the taxes on the real property from 1895 to 1904, inclusive, stating the sum paid each year, amounting to $2,039.88; that in all the negotiations Hoefer & Zorn refused to deal with the plaintiff, but recognized and did business with Keene alone, as the principal, at whose solicitation they accepted the deed in discharge of the condition of their bond, and in which transaction they dealt in good faith, believing that he was the owner of the real property against all the world but themselves, and that they were acquiring an absolute title in fee to the premises; that on January 25, 1896, the land was of no greater value than the principal and interest then due on the note, and that they had no notice or knowledge that the plaintiff had or claimed any estate or interest in or to any part of the land, except as the tenant or agent of Keene; and that Hoefer & Zorn, in good faith, took possession of all the real property with plaintiff's knowledge and consent January 25, 1896, and have ever since been in the quiet and peaceable possession thereof under a claim of right as the owner in fee simple, and without objection from the plaintiff or any other person, and have received the rents and profits of the land and appropriated the same to their own use. The reply put in issue the allegations of new matter in the answer, and the cause being tried, it was decreed that the plaintiff might redeem the land on or before October 10, 1906, by paying into court for Hoefer & Zorn, in gold coin, $14,600, upon the receipt of which they were required to execute to him a deed of the premises, but if they neglected to comply therewith, the decree should

operate as a deed; that if the plaintiff failed to pay that sum within the time specified, the real property should be sold in the manner provided by law for the foreclosure of liens upon land, and the proceeds arising from such sale applied as in such cases; and that the sum so found to be due should. bear interest at the rate of 7 per cent per annum from October 10, 1906, after which date the plaintiff was to receive the rents and profits of the land. From this decree Hoefer & Zorn appeal. The plaintiff also appeals from the action of the court in refusing to award him a recovery against Hoefer & Zorn of $42,000, less the debt which he claims to be due.

1. Without alluding to the testimony on this branch of the case, we think the original deed, executed by Keene to Hoefer & Zorn, who will hereafter be designated as the defendants, was intended by all the parties as a mortgage to secure the payment of $15,600, as evidenced by the promissory note, and that Keene was acting for the plaintiff as the trustee of an express trust. Though there is some conflict of judicial utterance as to the power of an infant to create a trust, reason and the weight of authority support the principle that a minor may call into existence a trust which is valid until avoided. Flint, Trusts, § 11; Perry, Trusts, § 33; 28 Am. & Eng. Enc. Law (2d ed.) 868.

2. The rule is universal that, when a deed, absolute in form, was intended by the parties at the time it was executed· to be the means of securing the payment of a debt, the performance of a duty, or the discharge of an obligation, the sealed instrument will, in a suit instituted for that purpose, be decreed to be a mortgage, and such intention may be established by parol. *Hurford* v. *Harned,* 6 Or. 362; *Stephens* v. *Allen,* 11 Or. 188 (3 Pac. 168); *Swegle* v. *Belle,* 20. Or. 323 (25 Pac. 633); *Adair* v. *Adair,* 22 Or. 115 (29 Pac. 193); *Trust Co.* v. *Loewenberg,* 38 Or. 159 (62 Pac. 647). The court found, according to the averments of the complaint,

that for the first three years after October 10, 1892, the plaintiff paid the defendants the interest agreed upon, and within that time he also gave them $1,000 on account of the principal. thereby reducing the debt to $14,600; that about September 30, 1895, he entered into a contract with them, whereby it was stipulated that thereafter they would accept the income and profits of the premises in lieu of the interest and taxes provided for; and that, pursuant to such agreement, the rents, from the time specified, were so received.

3. The plaintiff, as a witness in his own behalf, referring to the payments which he made to the defendants on account of the promissory note, testified as follows:

"The first year's interest I did not pay when it was due, * * but I got a concession from them for a few months, and I paid them interest on the bank of the Willamette river. I won't say what month, but that was in 1894, but it was summer time and lumber was being unloaded there for them.

Q. Well, go ahead and state what you paid.

A. Well, then, the next year's interest I borrowed from O. J. Goffin to pay them this $1,000, and I also borrowed some from him, I don't know exactly how much now, to pay on this interest. I know that I borrowed largely from Mr. Goffin to pay them $1,000, which was two years, which was more than a year, past due— this particular $1,000 I mentioned awhile ago having borrowed here. That made $1,000 paid on the principal and two years' interest paid in money, and that is all the money that I did pay.

Q. Who was present when you paid that money?

A. Well, there was nobody present that I remember about when I paid the first year's interest; but Mr. Goffin was with me—Dr. Goffin was with me, rather O. J. Goffin—when I paid the last money to him."

On cross-examination this witness was asked the following questions:

"Q. You say that this $1,000 that you claim to have paid that you borrowed that from Mr. Goffin?

A. Yes. Well, now, Mr. Goffin got the money for me, and I remember there were two notes—one to a man named Dufler, and one to another, Guston Bros.

Q. And you say he (O. J. Goffin) was present when you paid the money to Hoefer & Zorn?

A. Yes, sir.

Q. Where was it paid?

A. In Hoefer's house—Hoefer & Zorn's house at Champoeg.

Q. And how was it, in what medium?

A. Why, in money. I paid them in money all the time.

Q. Gold?

A. Well, I don't know. I think—I won't say as to whether it was gold. It could not very well have been silver. Perhaps it was gold. I won't say as to that.

Q. And did Goffin go with you for that purpose?

A. I don't know but that some of the money—I don't know but that a part of that money was in a check from Hager of the Oregon City Flour Mill. *· *

Q. Now, you think a part of this money you paid to Hoefer & Zorn was a check from Mr. Hager?

A. Possibly it was. I think rather it was on account of having gotten this Guston Bros.— Guston Brothers had to sell some wheat to loan this money, and they had the wheat at Mr. Hager's, and I know we were there. There was something about that that I won't be clear and positive about. * *

Q. Now, the first payment, you said that money was paid on the river bank?

A. Yes, sir.

Q. How much was paid at that time?

A. I don't know how much was paid. I know that I got $1,500 in Portland at that time, and it was my intention to get off of the steamer in Champoeg and pay these people and get some conveyance and go home, and Mr. Hoefer was down there and I got on the boat and come up to the Eldriedge Landing and got off there.

Q. And you paid him at the boat landing?

A. I paid him. They were putting off some lumber, if I remember right, for Hoefer & Zorn.

Q. How was that paid?

A. Well, that was paid in money. But I won't say as to the kind of money that it was paid in. I can tell

you who paid me the money, and where it was paid in Portland at that time.

Q. Well, I want to know about the medium in which you paid them.

A. Well, I won't say.

Q. No checks, were there?

A. No; I don't think there was. In fact, I am positive there was not."

O. J. Goffin testified that he had loaned money to Eldriedge, and in 1895 went with him to the home of the defendants, where the plaintiff paid them some money, was asked:

"Now, have you any idea approximately how much money he paid at that time?"

The witness answered:

"No; I could not say. In fact, I don't know just how much money it was. I don't just remember how much money I borrowed for him. Then I would turn over some grain to him, and also borrowed about $40 from a man by the name of Dufer."

In cross-examination the attention of this witness having been called to the payments made by the plaintiff to the defendants, was asked, "How much money was it?" and replied:

"I could not say. There was considerable money paid, but I don't know just as to the amount of it.

Q. Well, considerable money might mean—

A. Well, there was some gold there, and some paper there that I know of, and the only thing I have in mind now was I was borrowing some money some time before that, and he told me that he wanted that money to make a showing with Hoefer & Zorn. That is the words that he used, because I remember it.

Q. Did you ever borrow money for him?

A. I had to borrow money for him ever since 1891. I borrowed money in 1891 for him, and 1892, '93, '94, and made deals like that for him right along just to help him out."

The defendant Hoefer testified that he never received from the plaintiff any money on the bank of the river,

and that no interest was paid prior to 1895, but that he did receive from Goffin, who had leased the premises, a quantity of grain of the value of $509.50, which sum was credited to Keene. The defendant Zorn also testified that no part of the principal had ever been paid, and that no money as interest had ever been received, but that Goffin had delivered some rent.

The plaintiff further stated, on oath, that a part of the land in question was overflowed, and, desiring to drain the inundated portion, he procured a survey of the route for a ditch and ascertained that the cost of making the necessary improvement would be $3,000, or more; that Goffin, to whom the premises had been leased, offered to advance the money necessary to dig the conduit, if he could retain the rent until he was repaid the outlay, but would not undertake the enterprise unless the defendants consented, in writing, to such appropriation of the rents; and, referring to the attempt made in the fall of 1895, to obtain their assent, the witness testified as follows:

"I went to Hoefer & Zorn then with Goffin myself, and they refused; and I told them that the farm in that condition could not be made to pay the interest and taxes. Whereupon Mr. Hoefer & Zorn said that they would take the farm for interest and taxes, and I said, 'Very well,' and gave Mr. Goffin, as my tenant, there in their presence, instructions to turn over all the landlord's interest in that particular part of the ground to them until further notice, and that is about the way it has stood to the present day.

Q. Where was this conversation?

A. At Hoefer & Zorn's house at Champoeg.

Q. Did your tenant continue to pay them the rents and profits?

A. Yes, I believe they did. They never paid it to me. I didn't ask them for any accounting, and I never agreed to make an accounting to them. That is, O. J. Goffin was to turn over the landlord's interest to them, that is, much or little. They took it in lieu of interest and taxes."

On redirect examination, in referring to the attempt made to secure the defendants' consent to appropriating the rents in making the improvements, the plaintiff was asked, "Why did Goffin want that assurance?" and he replied:

"Well, he knew that my note was going to fall due— I call that my note, this note they say was signed by Keene—in 1897, and that was in 1895, and he didn't figure perhaps that the farm would make enough money to pay him in two years, and he thought I might be foreclosed."

O. J. Goffin testified: That in the fall of 1895 he secured from the plaintiff a lease of the premises for the term of 10 years, stipulating in the demise to give as rent one third of the crops raised and to dig a ditch to drain the overflowed part of the real property, retaining the rent reserved until he was reimbursed for the outlay. That he assigned his interest in the lease to his father, and, desiring to obtain the defendants' written consent thereto, he with the plaintiff called upon them for that purpose, but they refused to ratify the agreement, saying:

"I took Eldriedge with me there to explain the matter and try to influence Mr. Hoefer & Zorn to put their name on there. That my father was very much dissatisfied and would not go ahead with the ditch; and at the time the conversation come up that they could not farm the land to any advantage without the ditch. It is a fact today; and I had previous to that tried to dig the ditch with the help of Eldriedge, and had to give it up on account of not having enough money, and they were angry. Casper [Zorn] was doing the talking with Mr. Eldriedge. They were angry; and Eldriedge told him he could not possibly pay on that place and could not pay interest and taxes there unless there would be something done toward clearing up that bottom; and Casper spoke up and said he would pay the taxes and interest for the rent of that farm; * * and then Eldriedge turned around and told me, asked me if I heard that, and he said, 'You pay the rent to them. I am satisfied.'

Q. Then he told you that?

A. Yes, sir.

Q. Then you went away?

A. Well, we stayed around there, and we talked about it a little more, and we still tried to get them to sign a contract for this ditch."

Goffin further testified that, at his suggestion, his father thereafter secured from the defendants a lease of the premises, but that he did not think the plaintiff ever knew anything about it.

The defendants, as witnesses in their own behalf, severally testified that they never entered into any agreement with the plaintiff whereby they stipulated to receive the rent in lieu of the interest and taxes, but that on April 20, 1896, and after they secured Keene's second deed, they, as the owners of the land, leased it to F. Goffin, who thereafter, as their tenant, delivered to them the rent agreed upon for the use of the premises.

The foregoing excerpts from the testimony show the conflict as to the payments of interest and principal, claimed to have been made by the plaintiff on account of Keene's promissory note prior to January 25, 1896, when the second deed was executed to the defendants, and also indicates the controversy as to the alleged agreement of the latter to accept the rent in lieu of the interest and taxes. The theory of plaintiff's counsel is that their client never consented to the execution of the second deed, and though he was informed thereof soon after the sealed instrument was made, he knew that the equitable estate in the premises, which Keene held in trust for him, and of which the defendants had knowledge, was not thereby transferred, and he supposed that F. Goffin, who had secured from his son an assignment of the lease, was, as plaintiff's tenant, delivering to the defendants the share of the crops raised on the premises, pursuant to their stipulation to receive the rent in place of the interest and taxes, and hence no accounting was required. The defendants' counsel maintain that their clients dealt with

Keene in relation to the land, and, having obtained his deed of January 25, 1896, they, as owners in fee, leased the premises to F. Goffin, who tnereafter delivered to them the share of the crops agreed upon, and for this reason no accounting for the rents was necessary.

It is impossible to reconcile the testimony, and any conclusion that may be reached on the facts is doubtful. A moment's computation will disclose that the annual interest on the sum loaned, at the rate specified, is $1,092. It seems improbable that the plaintiff would have paid three installments of interest and the further sum of $1,000 on account of the principal, without taking any receipt therefor, or seeing that these sums were indorsed on Keene's note. That the plaintiff did not obtain from the defendants written evidence of the alleged payments or observe that the sums of money claimed to have been paid were indorsed on the negotiable instrument, or give any reason for his failure in these respects, are circumstances tending to discredit his testimony. So, too, the plaintiff's inability to fix the time when the alleged payments were made, or to state the amount of money which he claimed to have given the defendants, are also circumstances tending to weaken his declarations under oath. It must be admitted that in paying out small sums of money a person might not remember the medium or denomination of the coin or currency used, or, if he were daily disbursing large sums of money, it is possible that he might forget the details of the transaction. The testimony does not show that the plaintiff's business was of such magnitude that the giving of $1,092 would be classed as an insignificant sum, or that such payment was with him a matter of common occurrence, and for these reasons it would seem that he should have remembered the time, place, and circumstances of the respective alleged payments, including the medium in which they were made.

It will be remembered that the plaintiff testified that, in order to make a payment on the note, O. J. Goffin

borrowed money for him from one Dufler and also from Guston Bros., for which promissory notes were given, without stating what sums were thus obtained. Goffin testified that he borrowed money for the plaintiff, saying he secured for that purpose $40 from one Dufer. It is quite probable that the person last mentioned from whom a loan was thus obtained is the same individual indicated by the plaintiff as Dufler. The loan of $40 is the only money particularly specified by this witness, which sum is so small, when compared with a year's interest on the promissory note, that it would appear from his use of the qualifying word "considerable," as employed to express the amount of money which the plaintiff paid the defendants in his presence, that he did not mean thereby a very large sum. This witness further testified that, in addition to the money which he borrowed for the plaintiff, he also turned over to him some grain, which delivery would seem partially to corroborate the defendants' testimony that the only payments ever made on account of Keene's note was some grain, for which proper credit was given. All the testimony relating to the alleged payment of interest and principal for the first three years after the making of the promissory note has been hereinbefore set forth, a careful consideration of which, when examined by the light of reasonable probabilities, convinces us that the entire payments made by the plaintiff to the defendants within the time thus indicated amount only to $509.50, as testified to by the latter. The testimony also shows that the plaintiff represented to the defendants that, unless a ditch was dug, so as to drain a part of the land, thereby increasing the arable area, the interest and taxes stipulated to be paid could not be obtained from the premises by cultivation. According to the plaintiff's own admission, he was more or less in arrears all the time in the payment of the interest, and never paid any part of the taxes mentioned; in consequence of this default, the defendants complained

at the time it is asserted the rents were accepted in lieu
of the interest and taxes.    It would seem improbable
that the defendants agreed to such terms when they
knew that the share of crops stipulated to be given for
the use of the premises, was not equivalent in value to
the interest and taxes.

It would further appear, from Goffin's testimony, that
though some negotiations, in relation to the alleged agree-
ment to accept the rent in lieu of the interest and taxes,
had been attempted, thereafter efforts were made to
obtain the defendants' written indorsement on the lease,
to the effect that the tenant might be permitted to apply
the rent on account of the expense to be incurred in
digging the ditch, and that he might retain possession
of the land until the cost of making such improvement
was repaid from the revenue to be derived from the
source mentioned.    The subsequent attempt to secure
such consent induces the conclusion that there had been
no meeting of the minds of the plaintiff and defendants
on this branch of the case, and hence no contract, as
alleged, was ever consummated between them in relation
thereto.    No accounting has been demanded by either
party, nor is there any testimony in the transcript from
which the value of the rents received by the defendants
can be legally determined.    We entertain no doubt that
the original deed executed by Keene was intended by the
parties as a mortgage; and we also think that the subse-
quent deed did not transfer to the defendants the plain-
tiff's equitable estate in the land, and therefore a redemp-
tion from the lien or a foreclosure thereof should be
decreed, in view of which the plaintiff should be charged
with the sum loaned and the interest thereon at the rate
of 7 per cent per annum from October 10, 1892, and
the taxes annually assessed against the note, as pro-
vided for therein, if the amount of such burden can be
segregated from the defendants' assessment of money,
notes, and accounts; that the plaintiff should be credited

with $509.50, admitted in the answer to have been received, and such other sums of money or credits as he may hereafter be able to show, by a preponderance of the testimony, that he has paid or delivered on account of the promissory note, and also credited with the value of the rents and profits of the land which the defendants, as mortgagees in possession, have received since January 25, 1896, when they secured Keene's second deed.

4. It will be remembered that the plaintiff alleged that he was offered for the land $42,000, upon receiving which bid he notified the defendants thereof and demanded of them that he be permitted to redeem the real property, by complying with the conditions stated, but that they refused to accede to his request. The complaint does not allege a tender or an offer to pay $14,000, the sum admitted by the plaintiff to be due. The rules of law do not impose upon a party to a suit or action the performance of vain things, as a condition precedent to the enforcement of a right; and when the plaintiff averred that he notified the defendants of the alleged offer for the land, and that he would pay them the sum which he admitted to be due, if they would permit him to redeem the premises from their lien, and they refused to comply therewith, the complaint stated facts sufficient to entitle the plaintiff to the equitable relief which he sought, without alleging a tender or an offer to pay the sum conceded by him to be due to the defendants. *Lovejoy* v. *Chapman,* 23 Or. 571 (32 Pac. 687) ; *Fitzgerald* v. *Kelso,* 71 Iowa, 731 (29 N. W. 943).

5. The plaintiff's theory of the transaction is that the original deed executed by Keene was intended to secure the payment of a debt, and hence the sealed instrument is a mortgage. A lien having been thus created, the only way its discharge could have been secured was by tendering to the defendants the amount due on the promissory note, which was not done. Though the averment of a tender or an offer to pay such sum is not necessary

to be stated in a complaint, as a condition precedent to the right to redeem property from a lien, when such right is denied by the adverse party, for the reason hereinbefore stated, yet we think that the money admitted to be due the defendants should have been presented to them before they could be in default, so as to render them liable for the sum asserted to have been offered for the land, but no tender having been made, the court properly denied this part of the relief.

The decree will, therefore, be set aside, and the cause remanded, with directions to take further testimony as to the amount due on the note; and after that sum is ascertained in the manner indicated, a decree will be rendered as originally given, with such modifications as the changed conditions may require.        REVERSED.

---

Decided March 24, 1908.

## ON PETITION TO MODIFY DECREE.

[94 Pac. 563.]

MR. JUSTICE MOORE delivered the opinion of the court.

6. In a petition for a modification of the decree rendered herein by this court, the defendants' counsel waive all claim for taxes paid by their clients on the land in the years 1892 and 1893. They call attention to the fact that no demand is made in the pleadings for the repayment of taxes levied on the debt, evidenced by the promissory note; and they also assert that the amount of rent received by Hoefer & Zorn is not controverted by the plaintiff. It is alleged in the answer that the value of the rent obtained from the land from 1896 to 1904, inclusive, is $6,902.72, setting forth the sums received for each of those years, and that the estimated worth of the income from the premises in 1905 is $682.62, making in all $7,585.34. The plaintiff, replying thereto, denies, upon information and belief, that the sums so

stated are the only amounts received as rent, and avers that, if the defendants secured no greater sums than alleged, it is because of their neglect in managing the farm.    It will be seen that the reply admits that the defendants received as rent the sum stated, and hence they were not required specifically to prove these several items.    The burden of showing that greater amounts were secured than alleged, was assumed by the plaintiff, but he did not offer any testimony in support of this issue, and for that reason it must be regarded as true that the profits obtained from the land were of no greater value than the sum stated; and any declaration in the former opinion, to the effect that the worth of the income derived from the premises could not legally be determined from the testimony contained in the transcript, results from overlooking the issues involved.

It is insisted by defendants' counsel that as the undertaking on appeal, given by their clients, provides for the payment of the use and occupation of the premises pending the final hearing, not exceeding $1,500, as fixed by the trial court, the account should be adjusted as of July 16, 1906, when the original decree was given, and that interest from such time to the present should be computed at 7 per cent per annum on the money then found to be due the defendants, leaving the rent of the land for 1906 and 1907 to. be settled pursuant to the covenant contained in the undertaking.    To adopt the mode suggested would compel the plaintiff to pay more than $1,000 as interest upon interest, in excess of the sum which will be due by computing the compensation for the use of the money from the time specified in the note to the final settlement.

In view of the difference mentioned, the cause will be remanded to the lower court, with directions to ascertain the value of the defendants' use and occupation of the land during the years 1906 and 1907, and also to determine what sums, if any, they have paid out as taxes on

the premises since the original decree was rendered; and, when such findings have been made, to award Hoefer & Zorn $15,600 in United States gold coin, with interest thereon in like specie from October 10, 1892, at the rate of 7 per cent per annum to the time of the decree; the further sum of $2,039.88, without interest, that they paid as taxes on the land, and also any other sums that they have paid as taxes on the premises since July 16, 1906, as found by the court, less, however, $509.50, paid by the plaintiff on the loan, $7,585.34 as rent received by the defendants from 1896 to 1905, inclusive, and also the value of their use and occupation of the land during the years 1906 and 1907, as determined in the manner indicated; and to decree that if the plaintiff, on or before 30 days therefrom, pays to the defendants the remainder thus found to be due them and interest thereon at the rate of 7 per cent per annum from the time the decree is given, all in United States gold coin, the costs and disbursements in this court, and the costs to be incurred in determining the value of the defendants' use and occupation of the premises in 1906 and 1907, and any taxes they may have paid on the land during the years last mentioned, their lien upon the real property shall then be discharged, but if the plaintiff should fail to make such payments, however, within the time limited therefor, to order a sale of the real property, as upon execution, and from the proceeds arising therefrom that there be paid to the defendants the money so decreed them and also the expenses of such sale, and, if any part of the purchase price then remain, the same shall be paid to the plaintiff, but, if the premises do not bring at such sale the amount of money so awarded to the defendants, no judgment over will be rendered against the plaintiff.

The decree rendered herein by this court will be modified as mentioned.  REVERSED. MODIFIED.

Decided August 11, 1908.

## ON PETITION TO RECALL MANDATE.

[96 Pac. 1105.]

MR. JUSTICE EAKIN delivered the opinion of the court.

This is a suit to redeem real estate from a mortgagee in possession, decided by this court on January 7, 1908. (93 Pac. 246.) Upon motion of defendant the decree was modified on March 24, 1908. (94 Pac. 563.) A petition by plaintiff for rehearing was filed April 6, 1908, and denied April 28, 1908. The mandate was issued April 29, 1908, and this petition filed July 1, 1908, asking that the mandate be recalled and the cause remanded to the lower court to determine the amount of the rents for which defendants should account during the period of their possession.

7. It should be a sufficient answer to this motion to say that it asks exactly the same relief sought by plaintiff's motion filed April 6, 1908, and denied April 28, 1908. This petition is accompanied by several affidavits as to the reasonable rental value during said period. Plaintiff alleges in his complaint that the property was rented by him to Goffin in October, 1895, for a term of 10 years at a rental of one third of the crop, and that by agreement the tenants, by direction of the plaintiff, paid to Hoefer & Zorn each year until and including the year 1904 the rental stipulated in the lease, and that by such agreement Hoefer & Zorn received said rental in full payment of interest and taxes during said time. This allegation was for the purpose of showing that plaintiff should be permitted to redeem without paying interest on the debt. This allegation is denied by the answer, and the defendants affirmatively allege that they paid certain taxes, setting out the amount paid for each year, and that they received the rental for the years 1896 to 1904, inclusive, from said Goffin, setting out the amounts so received for each year—both of which allegations plaintiff denies in his reply on infor-

mation and belief. This was a material issue even from plaintiff's theory of the case. If he is permitted to redeem, he must pay interest, unless he establishes that defendants were to accept the rent in payment of interest and taxes, and, if he fail to establish such agreement, then the amount of the rental must be charged to the defendants in reduction of the amount due upon the deed, and thus by the pleadings the amount of the rental was a necessary issue. Defendants offered proof at the trial upon this issue, and plaintiff waived it, admitting the statement thereof contained in the answer to be true, and if he desired to establish that greater or other sums were received by defendants he should have done so then. There was no ruling by the court or other circumstance that would excuse him from doing so, and he is not permitted to say now that the final decree of the circuit court misled him. There was no pretense at the trial, and none is made now, that the defendants actually received more rental than they have accounted for. Therefore it is no ground for complaint that the plaintiff's attorneys admitted at the trial that the statements in the answer are correct as to the amount of rents received and taxes paid.

8. The burden of the affidavits accompanying the motion is that Goffin, the renter, placed there by plaintiff, offered to take a 10-year lease of the premises at an annual rental of $3,000. This was on the basis of some improvements that were to be made which would not be justified under a leasing from year to year; but a mortgagee in possession is not justified in making long term leases, as he cannot bind the estate beyond his possession, and the time of his occupancy is contingent. He is under no obligation to do so, even with the consent of the mortgagor, as the result of such a contract might be disastrous to him if a redemption were made within the term of the lease, as thus he would thereafter be a party to a contract in which he had no interest

and no part in its fulfillment, but liable to the lessee for possible violations of it by the mortgagor, or to other litigation.

9. Again, plaintiff, in October, 1895, leased the property to Goffin for a term of 10 years, and Goffin testifies that he entered under that lease at that time and continued to farm it thereafter, paying the rent to the defendants, namely, one third of the crop, until the commencement of this suit, and plaintiff is hardly in position to insist now that defendants should account for a greater rental. This case does not come within the principle laid down in *Branson* v. *Oregonian Ry. Co.,* 10 Or. 278, and *Smith* v. *Wilkins,* 31 Or. 421 (51 Pac. 438).

The petition to recall the mandate is denied.

<div align="right">

REVERSED. MODIFIED.

To RECALL MANDATE DENIED.