Submitted on briefs March 15, reversed and suit dismissed May 23, 1922.

## ENES *v.* POMEROY ET AL.

### (206 Pac. 860.)

**Trusts — One Purchasing Property With Money of Another and Taking Title in Himself Held Trustee Ex Maleficio.**

1. If one intrusts another with money for the purpose of buying real estate for the former, and the latter buys the property, taking title to himself without consent of the former, he at once becomes a trustee *ex maleficio* for the benefit of the former.

**Trusts—Purchaser in Good Faith from Trustee Ex Maleficio Takes Title.**

2. Purchaser of land from a trustee *ex maleficio* must have notice of the trust before he can be charged for the benefit of the *cestui que trust,* and the mere possession of the premises by the trustee is not of itself notice to a purchaser of the interest of a *cestui que trust.*

**Trusts—Actual Notice of Trust Ex Maleficio may be Shown by Circumstantial Evidence.**

3. Actual notice, on the part of a purchaser of land, that his grantor was a trustee *ex maleficio* may be proved by circumstantial evidence, but notice must be more than would excite the suspicion of a cautious and wary person, and must be so clear and undoubted with respect to the existence of the prior right as to make it fraudulent in the purchaser to take and hold the property.

**Trusts—Purchaser from Trustee Ex Maleficio Held not to have Notice of Interest of Cestui Que Trust.**

4. In an action to have a trust established in land, evidence *held* not to show notice on the part of the purchaser from a trustee *ex maleficio.*

From Marion: George G. Bingham, Judge.

In Banc.

Reversed and Suit Dismissed.

For appellants there was a brief over the names of *Mr. John H. McNary, Mr. S. M. Endicott* and *Mr. W. C. Winslow.*

For respondent there was a brief over the names of *Messrs. Carson & Brown* and *Messrs. Smith & Shields.*

BURNETT, C. J.—In this case the plaintiff claims that he entrusted the defendant Estella Pomeroy, then Estella Brown, with $1,500 of his money, for the purpose of contracting in his name for the purchase of real property involved in this suit. He charges that instead of stipulating thus, she made the agreement with the then owner of the property in her own name, providing for her purchase of the same, dependent upon making future payments. The plaintiff charges, in substance, that the defendant C. T. Pomeroy afterwards bought the property from the original owner with full knowledge that the plaintiff had advanced the money with which the first payment was made, finally married Mrs. Brown and took possession of the property. The prayer is to the effect that Pomeroy be declared to hold the premises as trustee for the plaintiff until the money the latter had advanced is repaid with interest, and that the plaintiff recover this amount from the defendants and have a lien against the premises, and for further relief.

The answer challenges everything alleged in the complaint except that Estella Pomeroy was formerly

Estella Brown and that she received from the plaintiff $1,500. It is also admitted that the two defendants were married to each other on January 17, 1921, and are now husband and wife. Otherwise the complaint is denied.

The answer affirmatively states that the defendant Estella contracted with the then owners of the property, Homer Gouley and Fannie Gouley, his wife, about May 29, 1920, to purchase the same at a price of $5,500, of which she paid $1,500 in cash on the execution of the agreement and was to pay $1,000 on or before November 1, 1920, the balance to be secured by a first mortgage on the property. The defendants say that when the second payment became due, the defendant Estella had no funds to complete the contract with the Gouleys and was in default in performance of her contract; and finally, that after such default C. T. Pomeroy purchased the property from the Gouleys and the defendant Estella for value and without any knowledge of any of the matters or things set forth in the complaint. This new matter was denied by the reply.

The substance of the testimony on behalf of the plaintiff is, that he was acquainted with Estella while she was yet the wife of one Brown, and that during her married life with Brown, the plaintiff made her some presents of money and furnished her $50 with which to secure a divorce from Brown. The plaintiff courted Estella and advanced her sums of money from time to time with which to pay her grocery bills and the like. At the time, she was residing in Salem in a house belonging to a railroad company. She had received notice to vacate the premises and was unable to find a house to rent, whereupon the plaintiff told her to see what she

could do in the way of purchasing one in his name, and she found that she could buy the property here in question from Gouley for $5,500 upon a cash payment of $1,500 and a further payment of $1,000 on November 1, 1920, whereupon Gouley would execute a deed and take back a mortgage for the remainder of the purchase price. The plaintiff says that he intrusted the defendant Estella with $1,500 in money, with instructions to contract with Gouley in the name of the plaintiff for the purchase of the property on the terms indicated. She, however, caused the contract to be made in her own name. The plaintiff soon afterwards discovered this and taxed her with deceit, whereupon she allayed his fears by stating to him that when the $1,000 should be paid in November she would cause the deed to be made directly to him. As November 1st approached he found himself unable to furnish the money, and so informed her. Later still, as he says, she told him that she had borrowed $1,000 on the property as security which still further postponed his action, as he relied upon her statement. Meanwhile, the defendant C. T. Pomeroy had appeared on the scene and taken rooms in the house which Estella had occupied at once on making the contract. It developed she had not borrowed the money and was in fact in default, and, on November 5, 1920, Pomeroy bought the house from Gouley direct, paying in cash $4,100, representing the balance of the purchase price, plus $100 interest.

The testimony on behalf of the defendants is to the effect that the party from whom Estella said she had borrowed the money for the $1,000 payment had approached Pomeroy to lend that amount of money on the property as it stood, but the latter

refused to make a loan on city property. This party then interested Pomeroy in buying the premises, with the result as stated.

The testimony of the plaintiff is utterly silent on the subject of Pomeroy's or Gouley's notice of anything about the plaintiff Enes. In other words, the testimony of the plaintiff utterly fails to impute to Pomeroy any knowledge of Enes or of the source from which Mrs. Brown secured the $1,500 which she paid on the contract. On the contrary, Pomeroy and the party who negotiated the sale of the property to him, as well as Gouley, the former owner of the premises, all state they never knew or heard of the plaintiff or of any connection he had with the transaction, until about the time of the commencement of this suit. What, then, are the rights of the parties under such circumstances?

1. It is elementary law that if A intrusts B with money for the purpose of buying real estate for the former and B takes the money and buys the property, taking title to himself without consent of A, B at once becomes a trustee *ex maleficio* for the benefit of A.

2. If that were all of the attraction, it would be easy to charge Estella as such trustee for the benefit of the plaintiff. But, like any other case of trust of that kind, the purchaser from the trustee must have notice of the trust, before he can be charged for the benefit of the *cestui que trust.* If the purchaser from the original trustee had no notice, or if the testimony fails to prove such notice, of the rights of the *cestui que trust,* such purchaser becomes a purchaser in good faith and is exempt from the effect of the trust.

Seemingly on the theory that the defendant Pomeroy had no actual notice of the rights of the plaintiff in the premises, plaintiff's counsel argue that when Pomeroy bought, the defendant Estella was in possession of the premises, which of itself was notice of some kind to Pomeroy, charging him with the duty of inquiry, and that he is affected by what such an inquiry would have disclosed. Conceding this as a principle, we cannot say that Pomeroy's inquiry would have disclosed anything further than what would have appeared by an inspection of the contract between Estella and Gouley. We cannot presume that Estella would have revealed to her latest suitor the fact that she had diverted to her own use money intrusted to her by his rival. The case comes within the analogy of Section 10174, Or. L., relating to fraudulent transfers of property. It is there stated that:

"The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

3. The notice in such cases must be actual notice: *Coolidge* v. *Heneky,* 11 Or. 327 (8 Pac. 281). Of course, actual notice may be proved by circumstantial evidence, but, as said by Mr. Justice WOLVERTON in *Raymond* v. *Flavel,* 27. Or. 219 (40 Pac. 158):

"It was error for the court to instruct the jury that notice of facts and circumstances that a prudent man would take notice of and inquire about, was equivalent to notice. * * Circumstances which one man might look upon with suspicion, and which might

cause him to make a careful inquiry, might escape the notice of another person of equal prudence and caution; so that the incidental question of common prudence is not a safe criterion by which to determine a question of notice. It might be and often is a circumstance tending to show bad faith, as fraud or guilty knowledge may be imputed either by direct proof, or evidence of a circumstantial nature, the same as any other fact, but the real and ultimate question for determination is the *mala fides* of the transaction. * *

"The notice must be more than would excite the suspicion of a cautious and wary person; it must be so clear and undoubted, with respect to the existence of a prior right, as to make it fraudulent in him afterwards to take and hold the property."

It was also held by Mr. Justice WATSON in *Hurford* v. *Harned*, 6 Or. 362, that:

"A court of equity will never presume fraud when the transaction under their investigation is equally susceptible of two explanations, one of which is consistent with a fraudulent intent, and the other with good faith and fair dealing. In such case that construction of the acts of the parties which is consistent with good faith and fair dealing will be preferred."

4. In applying this last precept to the case in hand, we start with the proposition that the plaintiff advanced the money to Estella with instructions for her to contract for the purchase of the property in his name, applying the money as a payment for the plaintiff. She contracted in her own name, using the plaintiff's money in the transaction. He does not appear anywhere in the papers as an interested party. His connection with the party was not disclosed to anyone. When Pomeroy came to buy he found the title to be in Gouley. Grant that he knew of the contract between Estella and Gouley,

the former was confessedly in default, and he was informed that the contract had been forfeited. He had a right to buy from Gouley. That he did so and paid a valuable consideration is without dispute. The most that he knew under the circumstances, in any view of the testimony, is that Estella was in default in the payment of the money. It is without dispute that Gouley destroyed the contract by tearing off the signatures. Pomeroy had a right to court Mrs. Brown and afterwards marry her. It is possible that she may have told him where she procured the money with which to make the first payment, but there is no testimony on that point. There is testimony, however, to the effect that she used all her arts to keep her two suitors from knowing anything about each other. Considered as a question of probabilities, it is not likely that she told Pomeroy anything about Enes or the fact that he had advanced money to her. It is consistent with good faith and fair dealing that Pomeroy courted his codefendant, found her in default in the contract she had made, brought the property and married the woman. Unless something more is shown, he cannot be punished for such a transaction.

From another point of view it is impossible for the plaintiff to recover in this suit. Claiming, as he does, that he furnished the money to Estella and directed her to contract in his name to purchase the property, the utmost he could have expected was to be substituted for her and to take her place in the contract. This would require him to perform that contract. Before Gouley parted with the title, the plaintiff would have been compelled not only to establish his right to be considered as the real contracting purchaser, but also to tender to Gouley per-

formance of the agreement before specific perform-
ance could be decreed. After Pomeroy bought the
property and thus became substituted for Gouley, it
would be further necessary to show that Pomeroy
bought with knowledge of the rights which the plain-
tiff claims. The most that the testimony discloses
is that when Pomeroy bought, he was told there
had been a contract to buy the property but that
it had been forfeited. All the witnesses who have
spoken on the subject say that the plaintiff was never
mentioned and it was not known that he had any
interest of any kind in the realty in question. Thus
the plaintiff is without any standing to enforce the
contract the benefit of which he says should inure to
him.

The plaintiff must look for his money where he put
it. A decree must be entered dismissing the suit.

REVERSED AND SUIT DISMISSED.